IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIM L. PROVITT, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:10cv1056-CSC |
| | )          (WO) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff was 45 years old at the time of the hearing before the ALJ. (R. 40). She had completed the twelfth grade. (R. 41). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "degenerative disc disease of the cervical and lumbosacral spine; lumbosacaral strain; right rotator cuff tear; and diabetes." (R. 15). Her prior

---

³ *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

work experience includes work as a cook, cook's helper, resident cook, retail stock clerk, and order selector. (R. 28). The ALJ concluded that the plaintiff was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, he also concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 28-29). Accordingly, the ALJ concluded that the plaintiff was not disabled. (R. 28-29).

**B. Plaintiff's Claim.** As presented by the plaintiff, the sole issue before the court is "[t]he ALJ's credibility findings are not based on substantial evidence." (Pl's Br. at 2, doc. # 12). It is to this issue that the court now turns.

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the

plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

After a cursory reference to some of the law of this circuit applicable to assessing the credibility determination of the ALJ, the plaintiff's argument, in its entirety, is as follows.

> In the present claim the ALJ concluded that the record did not contain objective signs and findings to support the degree of pain and limitation alleged by the Plaintiff. (R. 27). On appeal Plaintiff argues that the MER contains several MRI's of records, the most recent being from September 2008 and revealing disc bulging and spondylosis which although minimal, rise at three different levels of the Plaintiff's cervical spine. (R. 317). In addition the ALJ recognized right rotator cuff tear acknowledged by Dr. Taylor in September 2008 that is unacknowledged by DDS consultative examiner Golomb in his August 5, 2009 evaluation. While Dr. Golomb cited X-rays of the lumbar and cervical spine, he offered nothing regarding the Plaintiff's rotator cuff tear. (R. 270).

(Pl's Br. at 12, doc. # 12)

As explained below, the ALJ did not fully credit Provitt's testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d

5

1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.  In this circuit, the law is clear.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true  as a matter of law.  This standard requires that the articulated reasons must be supported by substantial reasons.  If there is no such support then the testimony must be accepted as true.  *Hale*, 831 F.2d at 1012.

At the administrative hearing, Provitt testified that pain in her back, neck and shoulder form the basis of her disability claim.  (R. 46).  She also suffers from diabetes and hypertension. (*Id.*)  She testified that the pain was "very excruciating in [her] lower left back area."  (*Id.*)

>   Q:   Well, what does it feel like?
>   A:   A spear going through your back and numbness going down my leg sometime from that pain.  I have shoulder pain.  I have torn tendons in my shoulder.
>   Q:   All right.  What I asked you was describe the pain.  What's it feel like?
>   A:   The tendon problem feels like more a pulling sensation.
>   Q:   Okay.  How intense or how strong is the pain?
>   A:   On a scale of one to ten, the lower back pain is like a  nine-

> and-a-half. The shoulder pain I will give it a seven-and-a-half, neck pain about the same as the shoulder but my lower back pain is the most severe.

(R. 46-47).

The ALJ recited Provitt's testimony and discussed the medical evidence. (R. 19-25). The ALJ acknowledged that Provitt has "medically determinable impairments that could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R. 26). If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, a review of the ALJ's decision demonstrates that the ALJ properly considered and discredited Provitt's testimony. Rather than give a synopsis, the court will quote it.

> Based on the record as a whole of the evidence, I find that the claimant does not have medical impairments which could reasonably be expected to give rise to the pain symptomatology to the extent alleged. . . .
>
> I have considered all the evidence of record and the testimony at the hearing. However, the record, in its entirety, does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged by the claimant. I further note that some pain and discomfort while working is not, per se, determinative of disability. The issue is whether or not the claimant's pain is of such severity to preclude all work. I find that several factors in this case leads me to conclude otherwise. On June 28, 2007, Dr. Taylor noted that she had mild degenerative changes of the cervical spine and congenital canal stenosis with multilevel degenerative changes of the lumbar spine. Dr. Taylor indicated that the MRI of the claimant' right

7

shoulder showed a full thickness tear of the rotator cuff with mild retraction (Exhibit 1F, pg. 4). This injury had fully healed by the time Ms. Provitt returned to Dr. Taylor on July 19, 2007, as had her cervical and lumbosacral strain. Dr. Taylor noted that the claimant's degenerative disc disease of her cervical and lumbar spine was stable, and he indicated that she had reached maximum medical improvement. He advised her to proceed with all activity as tolerated and to return to the office only as needed. On September 11, 2008, Dr. Taylor noted that at the time of her last office visit, the claimant had no neck, back, or shoulder pain, but her pain recurred when she returned to work as a cook. The claimant underwent a lumbar RI on September 25, 2008. This revealed mild degenerative disc disease without any evidence of disc bulge or herniation and mild hypertrophic changes at L5-S1. On October 9, 2008, the claimant exhibited full thoraeolumbar with pain on full range of motion. Dr. Taylor noted mild thoracolumbar paraspinous tenderness, but no spasms, and he reported that she had full cervical spine motion with pain on extreme range of motion. On November 19, 2009, the claimant's pain continued. She had full thoracolumbar motion and cervical spine motion. There remains mild thoracolumbar and cervical paraspinous tenderness. She has no neurologic abnormalities. She was diagnosed with degenerative disc disease of the cervical and lumbar spine and chronic cervical and lumbosacral strain. The claimant was referred to a pain clinic and prescribed medication.

Dr. Golomb concluded that there appeared to be some mild chronic degenerative change at L5-S1, and she may very well have some legitimate reason to complain about some back distress, but she had a tendency to over-exaggerate and overreact.

With respect to the claimant's alleged functional restrictions and restricted daily activities, I find that the claimant's testimony is inconsistent with the objective abnormalities established by the record; thus, her testimony is not persuasive. It is noted that there are no diagnostic studies to show abnormalities which could reasonably be expected to produce the symptoms anywhere near the level of severity alleged by the claimant. The record does not reveal the existence of any severe, underlying impairment generally associated with the intractable, unrelenting, and totally disabling pain which the claimant alleges as discussed in this decision.

(R. 26-28).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the treatment records, objective evidence, and Provitt's own testimony, the ALJ concluded that her allegations regarding the extent of her back pain were not credible to the extent alleged and discounted that testimony. After a careful review of the ALJ's analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination. It is undisputed that the plaintiff suffers from pain. However, the ALJ concluded that while Provitt's underlying conditions are capable of giving rise to some pain, her impairments are not so severe as to give rise to the disabling intractable pain as she alleged.

The medical records support the ALJ's conclusion that while Provitt's back, neck and shoulder impairments could reasonably be expected to produce pain, Provitt was not entirely credible in her description of her symptoms or her pain.  For example, Provitt testified that her shoulder pain rates a seven on a scale of one to ten because she has torn tendons. (R. 46). However, on July 19, 2007, Dr. Taylor noted that her right rotator cuff tear was healed and she had a full range of motion, with no weakness in the rotator cuff. (R. 178).  His note on that date also reflects that Provitt "stated that her neck, back and shoulder pain [were] completely resolved." (*Id*.).   Furthermore, in September and October 2008, Dr. Taylor noted that Provitt "has no asymmetric atrophy or asymmetric weakness of the rotator cuff." (R. 279).  He noted that her right rotator cuff tear was "only minimally symptomatic." (R. 279, 280).

During the July 19, 2007 visit, Dr. Taylor also noted that Provitt's cervical and lumbosacral strain were "completely resolved," and her degenerative disc disease was "stable." (R. 280).  He indicated she had reached maximum medical improvement. (*Id*).  Provitt did not return to Dr. Taylor until September 11, 2008 at which time she complained of neck, back and shoulder pain. (R. 279).  At that time, she had tenderness but no spasms and her range of motion had decreased. (*Id*.)  Dr. Taylor ordered MRIs of her cervical and lumbar spine. (*Id*.)

Provitt underwent MRIs on September 25, 2008.  The MRI of her cervical spine revealed "[d]egenerative disc disease with minimal disc bulge with associated minimal sypodylosis and uncinate spurring at C3-4, C4-5 and C5-6.  No significant canal or foraminal stenosis is seen." (R. 282).  This MRI does not differ significantly from her MRI dated June 26, 2007.  In 2007, the cervical MRI revealed "mild multilevel disc desiccation with minimal bulges noted from

C4-5 through C6-7 which do not result in any significant canal narrowing. No definite foraminal narrowing is seen. (R. 286). A MRI of Provitt's lumbar spine in September 2008 revealed only "[m]ild degenerative disc disease without evidence of disc bulge or herniation, [and] [m]ild hypertrophic changes of facet joints with evidence of synovitis involving the facet joints at L5-S1." (R. 283). No disc bulge or herniation was seen. (*Id*.) This MRI is a marked improvement from her June 2007 MRI which indicated "broad-based disc bulge and facet joint osteoarthropathy" at L5-S1 and "mild broad-based disc bulge and more prominent facet joint osteoarthropathy, severe on the left, . . . with mild canal narrowing posteriorly and moderate to marked bilateral foraminal narrowing" at L4-5. (R. 287). When Dr. Taylor examined Provitt on October 9, 2008, he noted "full thoracolumbar motion with pain on full range of motion. There is mild thoracolumbar paraspinous tenderness but no spasms." (R. 278). Dr. Taylor diagnosed Provitt with degenerative disc disease of the cervical and lumbar spine and with cervical and lumbosacral strain. (*Id*.) He prescribed pain medication and physical therapy. (*Id*.) Despite this referral to physical therapy, the only evidence in the record of physical therapy is dated December 22, 2009. (R. 311-315). Dr. Taylor did not seen Provitt again until November 19, 2009, at which time she had full range of motion in her cervical and lumbar spine, with mild tenderness. (R. 277). Provitt was referred to a pain clinic.[4] (*Id*.)

---

[4] The medical record indicates that Provitt presented to the Southern Pain Control Clinic on January 6, 2010. (R. 319-322). At that time she complained of pain in her neck and shoulder and lower back. She was able to perform actions during the examination but "demonstrates pain behavior of grimacing, [and] rubbing affected areas." (R. 320). Her back and neck range of motion were limited but her shoulder range was normal. (*Id*.) She was scheduled for lumbar and cervical blocks on January 12, 2010 but the procedures were cancelled after Provitt made very negative comments. (R. 318) Lidocaine patches were prescribed instead. (*Id*.)

In addition, on January 16, 2008, Provitt presented to Dr. Harris at UAB School of Medicine Montgomery Internal Medicine Clinic for follow-up treatment of her diabetes. (R. 197). During a musculoskeletal examination, all joints were examined and "[n]o joint effusions, erythema or crepitations" were noted. Her gait was also normal. (*Id*.) She was next seen by Dr. Harris on July 17, 2008, complaining of lower back pain. (R. 264). At that time, her lumbar spine was tender to palpation and she had limited lumbar flexion. (*Id*.). She evinced no synovitis in her upper extremities and her gait was normal. (*Id.*) Dr. Harris referred her to physical therapy and prescribed an anti-inflammatory and a muscle relaxant. (*Id*.)

Over a year later, Provitt returned to Dr. Harris on August 10, 2009 complaining of back pain. (R. 299). At that time she indicated that she had not done any physical therapy "in recent months." (*Id*.) Her lower back was positive for pain, with tenderness on palpation over the lumbar regions. (*Id*.). However, she had full range of motion in the lumbar spine. (*Id*.) She was again referred to physical therapy. As noted, Provitt did not seek physical therapy until December 22, 2009. (R. 311-315).

Other medical records do not corroborate her testimony of debilitating pain. On August 5, 2009, Provitt underwent a consultative examination by Dr. Golomb. (R. 266-76). At that time, she contended that her problem was pain in her lower back; her "right shoulder and neck are much better." (R. 266). Dr. Golomb noted that although Provitt was prescribed fourteen (14) Lortab pills for pain in January, she still had eleven tablets left. (R. 267). She told Dr. Golomb that she likes "to tend 'to my yard,'" and that she trims bushes and picks up pine cones. She also reads, watches television, and goes out to dinner with her boyfriend. (*Id*.).

During the evaluation, Dr. Golomb observed her "walking with a well-coordinated, brisk gait. She sat down in a chair with ease and sat fairly comfortably for approximately two hours, virtually in the same position." (R. 268). He noted that she "often moaned inappropriately." (*Id*.)

> She stood up from sitting with ease and moved about with reasonable agility. She did a lot of giggling and joking and overreacting to her complaints, and made light of this examination, asking often, "Why are you doing this? What's the purpose of this? Why are you asking these questions?"

(*Id*). Dr. Golomb reports the following regarding her extremities and range of motion.

> Extremities: She was very uncooperative, questioning every request for range-of-motion exercises. In attempting to perform various tasks, she hesitated, questioning the reason, and moaned and groaned very inappropriately, even before the exercise was performed.
>
> Range of motion of her head and neck: rotation to the right, 75 degrees; to the left, 75 degrees. Flexion, 40 degrees, at which point she said there was a pulling at the back of her neck. Neck extension, 35 degrees. Lateral flexion to the right, 40 degrees and to the left, 40 degrees. Range of motion of her shoulder joints: active abduction of each shoulder: 90 degrees, at which point she said she would not go any further due to a pulling in her back. She resisted passive abduction of her shoulders. She said, "If you go any further there'll be more pulling in my low back." Forward elevation of her shoulder joints: 90 degrees bilaterally. On the right, passive forward elevation, 110 degrees. She refused and resisted any passive forward elevation at the left shoulder. She repetitively said, "Jesus, Jesus, oh Jesus" when performing the various exercises, as if to indicate that she was in a lot of pain. . . Back flexion, 80 degrees; back extension, 20 degrees. She was tender over the left sacroiliac joint, and there were various trigger points that were positive around the left lower back – but there was no parspinous cervical, dorsal or lumbar muscle spasms.

> There was no joint which was red, hot, swollen, or tender.
>
> As mentioned above, she walked with a normal, well-coordinated gait. She could walk on her heels and toes and squat almost fully, at which point she arose quickly and said there was a pulling in her low back.

(R. 268-69).

Dr. Golomb took x-rays of her lumbar and cervical spine. (R. 270). He concluded that she had mild chronic degenerative changes at L5-S1 and normal cervical spine. (*Id.*). Dr. Golomb opined that

> [t]here appeared to be some mild chronic degenerative change at L5-S1, and she may very well have some legitimate reason to complain about some back distress, but she has a tendency to overexaggerate and overreact. There were some abnormal objective findings; however, based on the medical findings of this examination, I would conclude that she is able to function at a productive level of work for gainful employment, and should be able to perform work-related activities such as sitting, standing, walking, lifting, carrying and handling objects, with some limitations. There is no problem with hearing, speaking, and she could travel a reasonable distance.

(*Id.*)

Provitt sought treatment from her treating physicians on a sporadic basis and was not fully compliant with her physician's advice to attend physical therapy. While she had pain medication, she did not take it regularly. The frequency with which Provitt sought medical treatment, her failure to seek physical therapy and her minimal use of prescription pain medication militates against her credibility. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211-12 (11th Cir. 2005). The ALJ's reasons and conclusions that Provitt's testimony is inconsistent with the

medical records are sufficient to support his credibility conclusion which the court will not disturb.

To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

### V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 13th day of January 2012.

          /s/Charles S. Coody
        UNITED STATES MAGISTRATE JUDGE